UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **FRONTIER NATIONAL CORPORATION,** } } } | |
| Plaintiff/Counterclaim Defendant, } } | |
| v. } } | CASE NO. 2:13-cv-0520-SLB |
| **ST. PAUL MERCURY INSURANCE COMPANY,** a member of the **TRAVELERS COMPANIES,** } } } } } | |
| Defendant/Counterclaim Plaintiff. } | |

## MEMORANDUM OPINION

This case is before the court on defendant/counterclaim plaintiff St. Paul Mercury Insurance Company's (hereinafter, "defendant") Motion to Dismiss for Failure to Comply with Court Order. (Doc. 61.)[1] Upon consideration of the motion, the supporting and opposing memoranda, arguments of counsel, and the relevant law, the court finds that defendant's Motion is due to be denied.

## STANDARD OF REVIEW

Defendant seeks to dismiss this action with prejudice for plaintiff's failure to comply with the court's April 14, 2015 Order, (Doc. 59), requiring plaintiff to "fully answer and respond to all outstanding discovery." (Doc. 64 ¶¶ 4, 12.) "[T]he severe sanction of dismissal—with prejudice or the equivalent thereof—should be imposed only in the face of

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

a clear record of delay or contumacious conduct by the plaintiff." *McKelvey v. AT & T Techs., Inc.*, 789 F.2d 1518, 1520 (11th Cir. 1986) (quoting *Martin-Trigona v. Morris*, 627 F.2d 680, 682 (5th Cir.1980)) (internal quotations omitted). "Moreover, such dismissal is a sanction of last resort, applicable only in extreme circumstances, and generally proper only where less drastic sanctions are unavailable." *Id.* (citing *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984); *E.E.O.C. v. Troy State Univ.*, 693 F.2d 1353, 1354, 1358 (11th Cir.1982), *cert. denied*, 463 U.S. 1207, 103 S. Ct. 3538, 77 L. Ed.2d 1388 (1983)).

## PROCEDURAL HISTORY

This action, originally commenced in state court on March 8, 2013, was removed to this court, which has diversity jurisdiction over the case pursuant to 28 U.S.C. § 1332. (Doc. 1.) The original plaintiffs, Frontier Bank and its holding company, Frontier National Corporation ("FNC"), brought claims for breach of contract and bad faith surrounding their insurance policy with defendant, which allegedly entitles them to insurance proceeds based on losses suffered due to the dishonesty of Frontier Bank's former president and CEO, Steven Townson. (*Id*. at 27-28.) Shortly after removal, the Federal Deposit Insurance Corporation ("FDIC") filed a Notice of Substitution informing the court that it was acting as receiver for and successor in interest to Frontier Bank. (Doc. 4 at 1.) In its Answer, defendant counterclaimed against plaintiffs, seeking a declaration that the policy did not cover the alleged losses. (Doc. 6 at 9-10.)

The FDIC and defendant subsequently filed a joint motion pursuant to Rule 41(a)(2) to dismiss with prejudice all claims asserted by the FDIC and defendant against each other. (Doc. 25.) The court granted the motion "without prejudice to the claims asserted by Frontier National Corporation and all claims and defenses of St. Paul related thereto." (Doc. 26.) Defendant filed a motion to dismiss, asserting that the actions of the FDIC in dismissing its claims extinguished "any theoretical claim of the co-Plaintiff FNC." (Doc. 27 at 2.) The court denied the motion without prejudice, but found that the "complaint does not allege facts sufficient to state a claim against defendant" and that "it would also appear that plaintiff lacks standing to assert the claims" and gave FNC an opportunity to replead. (Doc. 31.)

FNC filed its First Amended Complaint on March 14, 2014, (Doc. 32), and thereafter, defendant sent discovery requests in November of 2014, including Supplemental Discovery Requests, which defendant attached to its Motion as Exhibit A. (*See* Doc. 61-1.) On January 9, 2015, the two attorneys representing FNC filed a Motion to Withdraw, (Doc. 43), which the court granted on March 23, 2015, (Doc. 51). Plaintiff's current counsel filed a Notice of Appearance on February 5, 2015, (Doc. 48), and remains, to date, plaintiff's only counsel of record. Pursuant to discussion with counsel, the court entered an Order on April 14, 2015 granting FNC's new counsel until May 15, 2015 "to fully answer and respond to all outstanding discovery," which included the Supplemental Discovery Requests issued on November 25, 2014. (Doc. 59.)

On May 6, 8, 13, and 15, plaintiff's counsel electronically delivered two letters listing information and documents and sent several documents to defendant, which included a spreadsheet listing Townson's compensation during various years from 1999 to 2011, an Amended and Restated Employment Agreement allegedly altered by Townson, the Lindsay Wilkinson affidavit, "numerous meeting minutes of FNC's Board of Directors and its Compensation Committee," and accounting reports from auditors hired by FNC. (*See* Doc. 61 ¶ 5; Docs. 61-2, 61-3.) By plaintiff's own admission, these responses were sent in a "piecemeal fashion" and were not "formal responses" to defendant's interrogatories and requests for production. (*See* Docs. 61-3, 64.) After defendant filed the Motion to Dismiss for Failure to Comply with Court Order, (Doc. 61), on May 22, 2015, FNC sent defendant formal responses to the Supplemental Discovery Requests on May 29, 2015, (Doc. 64-1), and filed an Opposition to Defendant's Motion to Dismiss on June 12, 2015, (Doc. 63). Defendant filed its Reply on June 24, 2015. (Doc. 64.)

## **FACTUAL BACKGROUND**[2]

FNC, the holding company for Frontier Bank, employed Steven Townson as the president and CEO of the bank beginning around August 24, 1998. (Doc. 32 ¶ 5.) Between August 24, 1998 and March 1, 2004, FNC went from paying Townson an annual salary of $125,000.00 (plus board fees) to paying him $244,000.00. (*Id.* ¶¶ 5-11.) In September 2000,

---

[2] Alleged facts taken from plaintiff's Amended Complaint are accepted as true for purposes of this Motion.

Townson's salary was increased to $170,000.00 annually without approval by FNC's Board or Compensation Committee, (*id.* ¶ 8), and in August 2002, "Townson was given a $15,000 increase in his salary," (*Id.* ¶ 9). In 2006, Townson instructed FNC's Corporate Secretary to raise his salary to $245,000.00 without prior approval. (*Id.* ¶ 12.) Then, in November 2008 and again in November 2009, Townson received bonuses, debt forgiveness, and money to defray his taxes totaling $358,500 without the FNC Board's knowledge or consent. (*Id.* ¶¶ 13-15.) FNC alleges that these overpayments were obtained through fraud. (*See id.* ¶ 15.)

In December 2011, FNC notified defendant, who had issued it a "financial institution bond . . . insuring FNC against, among other things, employee dishonesty," of "its intent to file a claim under the Bond and that discovery of its losses was ongoing." (*Id.* ¶¶ 25-26.) In January 2012, FNC terminated Townson for cause, and that summer, Townson filed bankruptcy. (*Id.* ¶¶ 23-24.) FNC filed a proof of loss on August 10, 2012 regarding the "fraudulently obtained compensation and benefits," and purporting to "reserve[] the right to make additional allegations and provide supporting documents." (*Id.* ¶¶ 27-28.) FNC and Frontier Bank had difficulty contacting defendant's agent assigned to adjust FNC's loss, and the agent appeared unfamiliar with the proof of loss at a meeting with FNC's directors and others in Atlanta. (*Id.* ¶¶ 31, 34.) From this, plaintiff inferred that defendant was concentrating on investigating plaintiff's and Frontier Bank's weak financial condition and delaying adjusting its claim "in the hopes that [Frontier] Bank would fail and that the FDIC

or new owner of the Bank['s] claims would not pursue the claims against [defendant] under the Bond." (*Id.* ¶¶ 29-30.)

**DISCUSSION**

Defendant argues that this case should be dismissed with prejudice because "[n]either FNC's 'informal' timely production nor its untimely 'formal' responses to St. Paul's Supplemental Requests constitute full and complete responses to St. Paul's outstanding discovery, and accordingly FNC is in violation of the [court's] Order," (Doc. 64 ¶ 5), while plaintiff contends that it has "fully complied" with defendant's discovery requests, (Doc. 63 ¶ 15). Having reviewed defendant's Supplemental Discovery Requests and plaintiff's responses thereto, the court agrees that plaintiff failed to adequately respond to defendant's discovery requests in both its "informal" and "formal" discovery responses.[3] For example, in the first interrogatory,[4] defendant seeks an itemization of the claim FNC is asserting against St. Paul, "including . . . a specification of the amount of employee compensation you contend was wrongfully received by Steven Townson itemized as to salary, bonuses, debt

---

[3] Plaintiff's counsel's contention that he was initially unaware that defendant expected "formal" responses is completely misguided. Defendant expected and, moreover, the court required individual answers corresponding to defendant's interrogatories and requests for production that fully and directly responded to the questions being asked and the documents being sought by May 15, 2015.

[4] Defendant sent plaintiff seven interrogatories in the Supplemental Discovery Requests, several of which reference or ask for certain documents. ( *See* Doc. 64-1.) Rather than have a corresponding number of requests for production, defendant simply states under "Request for Production of Documents" that plaintiff should "[p]roduce a copy of each document referenced or described herein or which FNC contends is supportive of its claims against St. Paul/Travelers in this case." (Doc. 64-1 at 17.)

6

forgiveness, and any other form of employee compensation you contend was improperly paid to or received by Townson." (Doc. 64-1 ¶ 1.) Plaintiff responds that it previously provided an itemization, but the spreadsheet, to which the court assumes plaintiff is referring, lists Townson's total compensation during various years from 1999 to 2011, without reference to whether the listed amounts constitute salary, bonuses, debt forgiveness, or another form of employee compensation, (Doc. 64-1 at 12), and thus, is a clearly inadequate response to defendant's interrogatory.

In the third, fourth, fifth, and sixth interrogatories, defendant asks whether certain amounts—a $15,000 increase in Townson's salary in August 2002; subsequent increases in Townson's salary; $101,000 in benefits; and bonuses, debt forgiveness, and tax payments—allegedly awarded to Townson by FNC are the result of "dishonest conduct," and if so, for plaintiff to "specify in detail each and every act by Townson which you contend constitutes 'dishonesty' within the meaning of the Financial Institution Bond." (Doc. 64-1 ¶¶ 3-6.) Plaintiff responds that Townson inappropriately received this compensation through "fraudulent activities," including "fraudulent manipulation of corporate documents, or creation or modification of misleading documents," but otherwise, provides no specific information regarding these fraudulent activities. (*Id.* at 12-15.) Neither plaintiff's vague statements about "fraudulent activities," nor plaintiff's reference to documents that allegedly show changes in Townson's compensation are responsive to defendant's interrogatories to

7

"specify in detail each and every act by Townson which you contend constitutes 'dishonesty.'"

Regarding document production as to those interrogatories, plaintiff responds by pointing defendant to documents that it contends show Townson's dishonest conduct, such as "Employment Contracts with Townson," corporate minutes from FNC Board meetings, "all documents evidencing changes in Townson's compensation," Townson's deposition, and the affidavit of Lindsay Wilkinson. (*Id.*) While plaintiff contends Townson fraudulently altered his Amended and Restated Employment Agreement, which is attached to defendant's Reply, defendant is correct that "[o]n its face, the purportedly altered Employment Agreement has no relevance to any issues raised by the Amended Complaint." (Doc. 64 ¶ 9.) The only other relevant document provided to the court is the Lindsay Wilkinson affidavit.

The Wilkinson affidavit provides evidence that Townson committed a number of fraudulent acts, but it also is not responsive to defendant's interrogatories or requests for production. (*See* Doc. 64-3.) Wilkinson, Frontier Bank's in-house attorney, testified about a number of Townson's acts of which Wilkinson has personal knowledge: Townson procured the signature of the Chairman of FNC's Compensation Committee on incomplete documents to prevent the Chairman from knowing "the content or true nature of all of the documents," some of which related to 15 shares of preferred stock of FNC; Townson substituted new pages for preexisting pages in his employment agreement with FNC "so that he could unilaterally change the terms of the original agreement;" fearing that FNC would no longer

8

have the means to satisfy its payment obligations under Townson's employment contract, Townson "unilaterally modif[ied] agreements relating to his employment by making Frontier Bank a party to the agreements and obligating it to perform under the agreements;" and "Townson substituted a new first page to the Amended and Restated Employment Agreement. . . . Townson instructed [Wilkinson] to send th[e] changed agreement containing the new false page along with other documents to Mr. Steve Eisen, counsel for Frontier Bank." (Doc. 64-3 at 3 ¶¶ 10, 12, 14-15.) Wilkinson's affidavit vaguely describing actions Townson took does not respond to defendant's request for documents or information showing the *specific* acts Townson took to obtain the *specific* compensation that defendant inquired about in interrogatories three through six.

As to additional document production, FNC states that "All Board minutes and documents evidencing changes to Townson's salary had been previously provided to St. Paul for its review and comparison." (Doc. 63 ¶ 12.) The court cannot determine whether the Board minutes, in fact, show unauthorized increases in Townson's salary, as those documents are not in the record. Additionally, in responding to the discovery requests, plaintiff states that "[t]he only documents which have not been produced are those that are not in FNC's possession, which were taken by the FDIC in March of 2013, as well as any documents held by the Georgia Department of Banking, as explained in our correspondence dated May 15, 2015." (Doc. 64-1 at 17.) While this may be true, plaintiff lists specific amounts in the First Amended Complaint that Townson allegedly received as salary, bonuses, and debt

9

Case 2:13-cv-00520-SLB   Document 65   Filed 07/09/15   Page 10 of 11

forgiveness that plaintiff must have learned about through documents either currently or previously in its possession. These documents must be produced and specifically identified if in plaintiff's possession.

The court finds that dismissal would be an extreme sanction in this case, and this is especially true, given that the record contains no indication that defense counsel attempted to confer with FNC's counsel to resolve this issue before involving the court. Defendant has neither requested lesser sanctions, nor shown that lesser sanctions will be ineffective. Defendant references FNC's former counsel's failure to respond to discovery, but the breakdown in communication between plaintiff's previous counsel and defense counsel does not reflect whether FNC's current counsel and defense counsel could resolve the instant discovery dispute outside of court. Having apparently failed to try, defense counsel's attempt to now have this action dismissed with prejudice is premature. Therefore, defendant's Motion will be denied.

Plaintiff must fully, individually, and specifically respond to defendant's Supplemental Discovery Requests by the date provided in the accompanying Order, to the extent it has not done so, or provide a specific reason under each interrogatory as to why plaintiff cannot provide the requested information. Should plaintiff fail to fully comply with the court's Order accompanying this Memorandum Opinion, this action may be dismissed with prejudice.

## **CONCLUSION**

Defendant's Motion to Dismiss for Failure to Comply with Court Order, (Doc. 61), is due to be denied. An order in accordance will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 9th day of July, 2015.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE